No. 25-30076

# In the United States Court of Appeals for the Fifth Circuit

JAMES MURRAY; LATAVIUS PASCHAL; ANTONE HENDERSON,
*Plaintiffs-Appellees*

v.

JAMES LEBLANC, SECRETARY OF DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONS; SETH SMITH,
*Defendants-Appellants*

———————————————

On Appeal from the United States District Court
Middle District of Louisiana
No. 21-cv-592, Hon. John W. deGravelles

———————————————

**APPELLANTS' OPENING BRIEF**

———————————————

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY
GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 428-7432
SmithKel@ag.louisiana.gov

J. BENJAMIN AGUIÑAGA
Solicitor General

KELSEY L. SMITH
Deputy Solicitor General

*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

## STATEMENT REGARDING ORAL ARGUMENT

This appeal concerns the district court's denial of qualified immunity to two State officials. While it largely concerns the straightforward application of legal principles, this Court may find argument beneficial in light of the district court's sparse oral ruling.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..........................................ii

STATEMENT REGARDING ORAL ARGUMENT.................................. iii

TABLE OF AUTHORITIES ........................................................vi

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT ................................................ 4

ISSUES PRESENTED ............................................................ 5

STATEMENT OF THE CASE .................................................... 6

   I.   UNDER LOUISIANA LAW, PARISH SHERIFFS HAVE EXCLUSIVE
      CUSTODY AND CONTROL OF PRETRIAL DETAINEES...........................6

   II.  PLAINTIFFS' ALLEGED INCIDENTS OCCURRED WHILE THEY WERE
      PRETRIAL DETAINEES AT A LOCAL PARISH JAIL. ..............................8

   III.   LITIGATION ENSUED ................................................... 12

     A.  The District Court Denied the Cross-Motions f or Summary
        Judgment. ..............................................................15

     B.  The DPSC Defendants Appealed the Denial of Qualified
        Immunity. ..............................................................15

SUMMARY OF THE ARGUMENT .......................................... 17

STANDARD OF REVIEW...................................................... 21

ARGUMENT ..................................................................... 22

   I.   PLAINTIFFS FAILED TO ESTABLISH SUBJECT MATTER
      JURISDICTION.........................................................22

A.  Plaintiffs Do Not Have Standing For Any Of Their Claims Against The DPSC Defendants. .................................................22

B.  Sovereign Immunity Bars Plaintiffs' Official Capacity Claims. .................................................................................28

II.  THE DPSC DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY. ......................................................................33

A.  The DPSC Defendants Are Entitled To Qualified Immunity On The Eighth Amendment Claims. ...........................................35

B.  The DPSC Defendants Are Entitled To Qualified Immunity On The Fourteenth Amendment Claims. ...................................37

1.  Plaintiffs' Fourteenth Amendment Claims All Require A Connection To The DPSC Defendants. ....................................38

2.  The Parish Sheriff Bears Legal Responsibility For The Pretrial Detainees, Not DPSC. .................................................40

3.  The DPSC Defendants Did Not Violate Plaintiffs' Constitutional Rights, So They Are Entitled To Qualified Immunity. .................................................................................49

CONCLUSION ........................................................................51

CERTIFICATE OF SERVICE .................................................53

CERTIFICATE OF COMPLIANCE ........................................54

# TABLE OF AUTHORITIES

## Cases

*Alderson v. Concordia Par. Corr. Facility*,
  848 F.3d 415 (5th Cir. 2017) ............................................................... 38

*Amiss v. Dumas*,
  411 So. 2d 1137 (La. Ct. App. 1982), *writ denied*,
  415 So. 2d 940 (La. 1982) ................................................................... 41

*Aucoin v. Larpenter*,
  2021-0064 (La. App. 1st Cir. 9/20/21), 329 So. 3d 363,
  *writ denied*, 2021-01505 (La. 12/7/21), 328 So. 3d 420 ................. 41, 43

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ............................................................................ 36

*Buehler v. Dear*,
  27 F.4th 969 (5th Cir. 2022) ..................................................... 34, 37, 49

*Calhoun v. Collier*,
  78 F.4th 846 (5th Cir. 2023) ..................................................... 18, 29, 31

*Carlton v. Fearneyhough*,
  No. 07-10676, 2008 WL 686595 (5th Cir. Mar. 12, 2008) ................... 36

*Carney v. Adams*,
  592 U.S. 53 (2020) ............................................................................. 23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................22, 36, 49

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ..................................................... 18, 21, 28

*City of Revere v. Mass. Gen. Hosp.*,
  463 U.S. 239 (1983) ............................................................................ 36

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ............................................................ 23

*Cleveland v. Bell,*
    938 F.3d 672 (5th Cir. 2019) .............................................. 34

*Cooley v. State,*
    533 So. 2d 124 (La. App. 4th Cir. 1988) ............................ 48

*Cozzo v. Tangipahoa Par. Council—President Gov't,*
    279 F.3d 273 (5th Cir. 2002) .............................................. 21

*Crittindon v. LeBlanc,*
    37 F.4th 177 (5th Cir. 2022) ................................... 15, 47, 48

*Cunningham v. Castloo,*
    983 F.3d 185 (5th Cir. 2020) ................................................ 4

*Damond v. City of Rayville,*
    127 F.4th 935 (5th Cir. 2025) ............................................ 38

*Diaz ex rel. Diaz v. Mayor of Corpus Christi,*
    121 F. App'x 36 (5th Cir. 2005) ......................................... 36

*Dockery v. Cain,*
    7 F.4th 375 (5th Cir. 2021) ................................................ 26

*Domino v. Tex. Dep't of Criminal Justice,*
    239 F.3d 752 (5th Cir. 2001) .............................................. 40

*Duvall v. Dallas Cnty.,*
    631 F.3d 203 (5th Cir. 2011) .............................................. 39

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ............................................................ 30

*Edler v. Hockley Cnty. Comrs Court,*
    589 F. App'x 664 (5th Cir. 2014) ....................................... 39

*Fairley v. Stalder*,
  294 F. App'x 805 (5th Cir. 2008) ......................................................... 42

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ................................................................. 23, 24, 26

*Freedom From Religion Found., Inc. v. Mack*,
  4 F.4th 306 (5th Cir. 2021) ................................................................. 32

*Freedom From Religion Found., Inc. v. Mack*,
  49 F.4th 941 (5th Cir. 2022) .......................................................... 18, 32

*Freeman v. Gore*,
  483 F.3d 404 (5th Cir. 2007) ............................................................... 50

*Gough v. McCain*,
  1:19-CV-01183, 2022 WL 669866 (W.D. La. Feb. 3, 2022),
  *report and recommendation adopted*, 19-CV-1183,
  2022 WL 669411 (W.D. La. Mar. 4, 2022) .......................................... 42

*Green v. Mansour*,
  474 U.S. 64 (1985) ............................................................................... 32

*Green Valley Special Util. Dist. v. City of Schertz*,
  969 F.3d 460 (5th Cir. 2020) ..................................................... 18, 30, 31

*Hallett v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) ........................................................ 18, 26

*Hare v. City of Corinth*,
  74 F.3d 633 (5th Cir. 1996) ..................................................... 36, 38, 39

*Harper v. State, Dep't of Pub. Safety & Corr.*,
  679 So. 2d 1321 (La. 1996) .................................................................. 47

*Herman v. Holiday*,
  238 F.3d 660 (5th Cir. 2001) ........................................................ 18, 27

*Jason v. Tanner*,
   938 F.3d 191 (5th Cir. 2019) ........................................21, 50

*Jones v. St. Tammany Par. Jail*,
   4 F. Supp. 2d 606 (E.D. La. 1998) ........................................41

*Joseph on behalf of Estate of Joseph v. Bartlett*,
   981 F.3d 319 (5th Cir. 2020) ........................................21, 34

*King v. Handorf*,
   821 F.3d 650 (5th Cir. 2016) ........................................22

*Langley v. City of Monroe*,
   582 So. 2d 367 (La. App. 2d Cir. 1991) ........................................42

*Lewis v. Casey*,
   518 U.S. 343 (1996) ........................................46

*Lytle v. Bexar Cnty.*,
   560 F.3d 404 (5th Cir. 2009) ........................................34

*Marshall v. Webre*,
   CV 23-1319, 2023 WL 5952645 (E.D. La. Sept. 13, 2023) ............21, 42

*Morin v. Caire*,
   77 F.3d 116 (5th Cir. 1996) ........................................19, 31, 35

*Morrow v. Meachum*,
   917 F.3d 870 (5th Cir. 2019) ........................................34

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ........................................17, 23, 25

*NiGen Biotech, L.L.C. v. Paxton*,
   804 F.3d 389 (5th Cir. 2015) ........................................29, 30

*Olabisiomotosho v. City of Houston*,
   185 F.3d 521 (5th Cir. 1999) ........................................39

ix

*Papasan v. Allain,*
478 U.S. 265 (1986) ............................................................ 31

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) ....................................................... 28, 29

*Porter v. Epps,*
659 F.3d 440 (5th Cir. 2011) ............................................ 38

*Preiser v. Rodriguez,*
411 U.S. 475 (1973) ..................................................... 20, 46

*Price v. Shorty,*
632 F. App'x 211 (5th Cir. 2016) ..................................... 29

*Quatroy v. Jefferson Par. Sheriff's Off.,*
CIV.A. 04-1425, 2009 WL 1380196 (E.D. La. May 14, 2009) .............. 41

*Quinn v. Manuel,*
773 F.2d 605 (5th Cir. 1985) ............................................ 41

*Reimer v. Smith,*
663 F.2d 1316 (5th Cir. 1981) ...................................... 25, 40

*Rucker v. Marshall,*
119 F.4th 395 (5th Cir. 2024) ........................................... 21

*Salazar v. Molina,*
37 F.4th 278 (5th Cir. 2022) ................................. 34, 37, 49

*Seminole Tribe of Fla. v. Florida,*
517 U.S. 44 (1996) ........................................................... 30

*Shepherd v. Dallas Cnty.,*
591 F.3d 445 (5th Cir. 2009) ............................................ 39

*Thompkins v. Belt,*
828 F.2d 298 (5th Cir. 1987) ............................................ 42

*Thompson v. Upshur Cnty.*,
  245 F.3d 447 (5th Cir. 2001) ...................................................20, 50, 51

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .......................................................................23, 25

*Valentine v. Collier*,
  993 F.3d 270 (5th Cir. 2021) .............................................................. 46

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
  535 U.S. 635 (2002) .......................................................................... 29

*Wells v. La. Dep't. of Pub. Safety & Corr.*,
  No. 46,428 (La. App. 2d Cir. 8/24/11), 72 So. 3d 910, *writ denied*,
  11–2637 (La. 2/10/12), 80 So. 3d 474 ................................................. 44

*Will v. Mi. Dep't of State Police*,
  491 U.S. 58 (1989) ............................................................................. 28

*Williams On Behalf of J.E. v. Reeves*,
  954 F.3d 729 (5th Cir. 2020) .......................................................18, 29

**Statutes**

8 U.S.C. § 3626 ..........................................................................26, 27

La. R.S. § 15:704 ...................................................................... passim

La. R.S. § 15:706 ...................................................................... passim

La. R.S. § 15:824 ...................................................................... passim

**Other Authorities**

*Offender Detail: Offender Antone Henderson*, VINELink Louisiana
  (last visited June 25, 2025), https://tinyurl.com/bddzmxhd ................ 10

*Offender Detail: Offender James M. Murray*, VINELink Louisiana
  (last visited June 25, 2025), https://tinyurl.com/yc4nsb6x .................. 12

*Offender Detail: Offender Latavius Javonta Paschal*, VINELink
    Arkansas (last visited June 25, 2025), https://tinyurl.com/mr4crs3y. 11

**Rules**

Fed. R. Civ. P. 25(d)....................................................................13

Fed. R. Civ. P. 56(a)....................................................................34

## INTRODUCTION

This case is a clear example of constitutional claims being directed at the wrong defendants. Antone Henderson, Latavius Paschal, and James Murray—who were previously pretrial detainees in a local parish jail—seek to hold State officials personally liable for allegedly unconstitutional conditions in the parish jail. But Louisiana law draws a bright and legally binding line: The parish sheriff—not Louisiana's Department of Public Safety and Corrections (DPSC)—is solely responsible for the pretrial detainees in his jail. La. R.S. §§ 15:704, 706. DPSC's legal responsibility begins only once an individual is convicted and sentenced, thus crossing from pretrial detainee to convicted inmate. La. R.S. § 15:824(A), (C).

Plaintiffs ask this Court to ignore that statutory reality and transfer legal responsibility from the Madison Parish Sheriff (who has settled out of this case) to DPSC officials who had no role in their custody. That would not only misplace constitutional liability—it would upend Louisiana's statutory scheme and violate core principles of federalism.

Plaintiffs' case collapses under both jurisdictional and substantive scrutiny. As always, jurisdiction first. Plaintiffs lack Article III standing

1

to sue the DPSC Defendants, as their claims for equitable relief are moot and their alleged injuries are not fairly traceable to any action or inaction by DPSC. The Madison Parish Sheriff—not DPSC—had exclusive control over their confinement, and that is where any potential liability must lie. Plaintiffs cannot meet the basic constitutional requirement that their harms are "fairly traceable" to the DPSC Defendants. Relatedly, Plaintiffs' official capacity claims are barred by sovereign immunity, as they seek retrospective relief without alleging any ongoing or future harm. *Ex parte Young* offers them no lifeline.

Plaintiffs also fail on the merits, as they cannot overcome the DPSC Defendants' qualified immunity. As pretrial detainees, Plaintiffs cannot invoke the Eighth Amendment, which applies only to *convicted inmates*. Their attempt to shoehorn in Eighth Amendment claims is foreclosed as a matter of law.

Plaintiffs' Fourteenth Amendment claims are no more successful. The DPSC Defendants could not violate Plaintiffs' rights as pretrial detainees because DPSC had no legal responsibility for their custody and conditions thereof. Louisiana law is clear: Custody and control of pretrial detainees rests with the parish sheriff alone. That means the Madison

2

Parish Sheriff was responsible for any constitutional failures of Plaintiffs' confinement. Without a constitutional violation traceable to the DPSC Defendants, Plaintiffs cannot satisfy the first step of the qualified immunity analysis.

In short, Plaintiffs' suit is built on a flawed theory that DPSC bears legal responsibility for pretrial detainees' jail conditions. State law says otherwise. Because Plaintiffs have sued the wrong parties under the wrong theories, their claims cannot proceed.

# JURISDICTIONAL STATEMENT

This is an interlocutory appeal from the denial of qualified immunity at the summary judgment stage. *See* ROA.7800 (DPSC Defendants' Motion for Summary Judgment); ROA.7824–25 (DPSC Defendants' Qualified Immunity Argument); ROA.14939–49 (Transcript of Oral Reasons Denying Defendants' Motion for Summary Judgment). This appeal presents pure legal questions. As such, this Court has jurisdiction under the collateral-order doctrine. *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020).

## ISSUES PRESENTED

1.    Whether Plaintiffs have standing to bring their claims against the DPSC Defendants when their alleged injuries are not fairly traceable to the DPSC Defendants' actions.

2.    Whether sovereign immunity bars Plaintiffs' official capacity claims when the complaint fails to allege an ongoing violation of federal law and any prospective relief would not redress Plaintiffs' injuries.

3.    Whether the district court erred in denying the DPSC Defendants qualified immunity when there was no violation of Plaintiffs' constitutional rights by either DPSC Defendant.

## STATEMENT OF THE CASE

### I.    UNDER LOUISIANA LAW, PARISH SHERIFFS HAVE EXCLUSIVE CUSTODY AND CONTROL OF PRETRIAL DETAINEES.

In Louisiana, individuals awaiting trial are housed in local parish jails and classified as pretrial detainees. Under State law, the parish sheriff is the "keeper of the public jail" in his parish, tasked with maintaining order and managing detainees. La. R.S. § 15:704 (entitled "Sheriff Keeper of Jail"). If a pretrial detainee is moved from one parish to another, then "[t]he sheriff of the parish to which the prisoner is conveyed" is charged with keeping "the prisoner safe and secure." La. R.S. § 15:706(C). This statutory design unambiguously places exclusive authority and responsibility for the safekeeping, housing, and well-being of pretrial detainees firmly with parish sheriffs.[1]

That authority and responsibility changes, however, once an individual is convicted and sentenced to time in a correctional institution. Then—and only then—does the now-convicted inmate become the responsibility of DPSC. La. R.S. § 15:824(C)(1) ("only individuals *actually*

---

[1] While not applicable in this case, there is a narrow carve-out to this general rule. *See* La. R.S. § 15:824(C)(2) (setting forth a specific exemption with strict requirements).

*sentenced* to death or confinement at hard labor *shall be committed to* [*DPSC*]" (emphasis added)); La. R.S. § 15:824(A) ("any individual subject to confinement in a state adult penal or correctional institution shall be committed to [DPSC] and not to any particular institution within the jurisdiction of the department"). There is thus a bright line between the statutory responsibility for pretrial detainees (the parish sheriff) and for convicted inmates (DPSC).

That bright-line responsibility holds true even when DPSC contracts with local parish jail facilities to house convicted inmates due to overcrowding of state penal institutions. *See* ROA.7828. In that specific situation (*i.e.*, when parish sheriffs assume the housing responsibility of *convicted inmates*, which—to be clear—does not mean DPSC assumes legal responsibility of the parish's *pretrial detainees*), DPSC and the parish sheriffs have agreed to operate under "Basic Jail Guidelines." ROA.7827. These guidelines ensure the constitutional rights of *convicted inmates*—whose responsibility falls on *DPSC*—are protected adequately by the parish sheriffs. ROA.7827; *see* ROA.1210 (the guidelines were created to ensure "the fundamental rights of *DPSC prisoners* housed in secure non-DPSC facilities are not jeopardized by this arrangement"

7

(emphasis added)). This means, of course, that the guidelines simply do not apply to pretrial detainees in local parish jails. ROA.7828.

## II.    PLAINTIFFS' ALLEGED INCIDENTS OCCURRED WHILE THEY WERE PRETRIAL DETAINEES AT A LOCAL PARISH JAIL.

Plaintiffs were all pretrial detainees housed at Madison Parish Correctional Center (MPCC), a facility neither operated nor controlled by DPSC. ROA.1210, 7827. Each plaintiff alleges he was assaulted by other inmates while in custody at MPCC. In all three cases, the attacks occurred either in mixed dorms (one with both convicted inmates and pretrial detainees) predominantly housing pretrial detainees or in dorms designated exclusively for pretrial detainees. None of the Plaintiffs reported having known enemies at the time of their housing assignments, and each testified that MPCC staff were not present in the dorms' control booths (where guards monitor the dorms) during the incidents. Boiled down, their claims are based on incidents involving other detainees that occurred in a facility DPSC does not own, operate, or control.

*Antone Henderson.* As a pretrial detainee, Henderson was transferred to MPCC in August 2020. ROA.7828. He was initially placed in a mixed dorm and experienced no issues until a verbal threat led MPCC staff to move him to a lockdown cell and later to a trustee dorm (a

8

dorm with convicted inmates who MPCC has made trustees), where he reported no problems. ROA.7828.

MPCC later reclassified the dorm into a pretrial-detainee-only unit. ROA.7828–29. On January 17, 2021, Henderson was involved in an altercation with other pretrial detainees in that dorm. ROA.7829. No convicted inmates were involved—only pretrial detainees—and there was no MPCC guard in the control room monitoring the dorm. ROA.7829. Following the incident, MPCC placed Henderson in lockdown. ROA.1230. MPCC then assigned him to the same pretrial unit, where a second incident occurred. ROA.7829. Once again, the altercation involved only pretrial detainees, and no MPCC guard was monitoring the dorm. ROA.7829. Henderson thereafter filed a grievance with MPCC. ROA.7829.

By May 2024, Henderson was no longer a pretrial detainee in MPCC's custody. *See* ROA.5858 (deposition occurring at Elayn Hunt Correction Center—a DPSC prison).[2]

---

[2] As of May 2, 2025, DPSC reported Henderson as "out of custody" on "general release." *See Offender Detail: Offender Antone Henderson*, VINELink Louisiana (last visited June 25, 2025), https://tinyurl.com/bddzmxhd.

*Latavius Paschal.* As a pretrial detainee, Paschal was transferred to MPCC in November 2020 and initially placed in lockdown due to Covid protocols. ROA.7829. In December 2020, he was moved to J Dorm, which was estimated to be 90% pretrial detainees and 10% convicted inmates (at the time, there were approximately five convicted inmates out of 32 total individuals in the dorm). ROA.7829–30. Paschal had no known enemies when assigned to J Dorm. ROA.7830. Shortly after his placement, several convicted inmates were transferred out, leaving about three convicted inmates in the dorm. ROA.7830.

On January 20, 2021, Paschal was called over by another pretrial detainee and then attacked by roughly fifteen individuals—at least thirteen of whom were pretrial detainees. ROA.7830. The dorm's ringleader, identified as "Donny," was also a pretrial detainee. ROA.7830. There was no MPCC staff in the dorm's control booth during the incident. ROA.7831.

By May 2024, Paschal was not even in the state of Louisiana—much less a pretrial detainee at MPCC—as he was detained in an Arkansas jail. ROA.5373.[3]

---

[3] As of June 21, 2025, Arkansas reported Paschal as being "in

*James Murray.* As a pretrial detainee, Murray was transferred to MPCC on June 19, 2020, and initially placed in B Dorm, which housed only pretrial detainees at that time. ROA.7831. About a week later—and during the Covid era—MPCC began moving a few convicted inmates into the dorm. ROA.7831. Murray was eventually reassigned to C Dorm, another mixed dorm. ROA.7831. When he expressed discomfort with certain individuals in C Dorm, MPCC moved him back to B Dorm. ROA.7831. Murray had no known enemies there. ROA.7831.

On October 18, 2020, Murray was attacked by several individuals in B Dorm. ROA.7832. He estimated the attack lasted five to ten minutes due to the absence of MPCC staff in the dorm's control booth. ROA.7832, ROA.1222. He was taken to the hospital and treated for his injuries. ROA.7832.

After returning, Murray was placed in a lockdown cell. ROA.7832. He later asked to return to general population. ROA.7832. MPCC assigned him to J Dorm, which was then a trustee dorm. ROA.7832. Soon after, J Dorm was converted to a pretrial-detainee-only dorm. ROA.7832.

custody." *See Offender Detail: Offender Latavius Javonta Paschal,* VINELink Arkansas (last visited June 25, 2025), https://tinyurl.com/mr4crs3y.

Tensions arose in the dorm after other pretrial detainees learned he had filed a complaint against a different detainee. ROA.7832. The dorm turned against him, and other pretrial inmates roughhoused and beat Murray. ROA.7832. Once again, there was no MPCC staff in the dorm's control booth. ROA.7832. Murray escaped the dorm, ROA.7832, and was placed in protective custody until his transfer to another facility, ROA.7833.

He was later convicted and sentenced on charges unrelated to his pretrial detainment, thus crossing from pretrial detainee to convicted inmate. ROA.1233; ROA.5854–55 (taking a plea deal for other charges, transferring to another facility, and becoming a "[DPSC] inmate" at DPSC's Raymond Laborde Correctional Center).[4]

## III.  LITIGATION ENSUED

Plaintiffs filed suit against the Sheriff of Madison Parish (Sammie Byrd), employees of LaSalle Management (the private operator of MPCC), and two DPSC officials—DPSC's Secretary (James LeBlanc) and

---

[4] As of February 11, 2025, DPSC reported Murray as "in custody" at Louisiana State Penitentiary in Angola. *See Offender Detail: Offender James M. Murray*, VINELink Louisiana (last visited June 25, 2025), https://tinyurl.com/yc4nsb6x.

Chief of Operations (Seth Smith) (together, the DPSC Defendants), both in their individual and official capacities.[5] Plaintiffs sued under Section 1983 for alleged violations of their constitutional rights. ROA.1237–41. Plaintiffs' Third Amended Complaint is operative. For this appeal, only the claims against the DPSC Defendants are relevant, and there have been several dispositive motions and court rulings related to those claims. *See, e.g.*, ROA.1247 (LeBlanc's Motion to Dismiss Third Amended Complaint); ROA.1250–51 (discussing procedural history); ROA.1552 (Smith's Motion to Dismiss); ROA.1753 (Ruling and Order denying motions). Plaintiffs settled their claims against the Madison Parish Sheriff. ROA.2602–03.

In their operative complaint, Plaintiffs alleged the DPSC Defendants (individual capacities) violated their Fourteenth Amendment rights through allegedly impermissible conditions of confinement. ROA.1237 (Count I). Next, Murray alleged the DPSC Defendants (individual capacities) violated his Eighth Amendment rights by acting

---

[5] On August 29, 2024, Governor Jeff Landry appointed Gary Westcott as the new Secretary of DPSC. Gary Westcott is automatically substituted for James LeBlanc as the defendant for Plaintiffs' official capacity claims. *See* Fed. R. Civ. P. 25(d).

with deliberate indifference to his safety while he was incarcerated as a pretrial detainee. ROA.1238 (Count II). Finally, Plaintiffs alleged the DPSC Defendants (official capacities), violated their Fourteenth and Eighth Amendment rights by (1) establishing and maintaining policies, customs, and practices that ignored allegedly known risks of violence and (2) failing to implement necessary measures such as proper classification, investigation of incidents, staffing, and training. ROA.1238–41 (Count III).

The DPSC Defendants responded with a motion for summary judgment explaining that Plaintiffs' claims against them fail as a matter of law because DPSC has no legal responsibility for the supervision, custody, care, housing, or assignment of pretrial detainees in parish jails. ROA.7800 (Motion); ROA.7803 (Memorandum in Support). And, as neither of the DPSC Defendants violated clearly established law, the DPSC Defendants asserted the defense of qualified immunity. ROA.7824–25. Plaintiffs, in turn, filed their own motion for summary judgment. ROA.2604.

## A. The District Court Denied the Cross-Motions for Summary Judgment.

The district court considered the cross-motions, declined oral argument, and rendered oral reasons denying both motions. ROA.14939, 14943–45; *see also* ROA.14889 (Minute Entry). The court almost exclusively relied on this Court's (out-of-context) statement in *Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022), that "DPSC is responsible for local jails once they house DPSC prisoners," ROA.14943, concluding DPSC "err[ed] in arguing that [DPSC] had no responsibility over what befalls pretrial detainees at this local jail," ROA.14944.

Regarding summary judgment, the court merely said "there are numerous questions of fact on all of the above issues … precluding … summary judgment." ROA.14944 (listing several general factual disputes); ROA.14889. He concluded that "a juror could find in favor of the non-mover for each claim." ROA.14944–45.

## B. The DPSC Defendants Appealed the Denial of Qualified Immunity.

The DPSC Defendants immediately filed a notice of appeal regarding the denial of qualified immunity. ROA.14898. Plaintiffs attempted to certify the DPSC Defendants' appeal as frivolous. ROA.14901 (Motion to Certify Appeal as Frivolous); ROA.14922 (DPSC

15

Defendants' Opposition). The district court denied that request. Dist. Ct. ECF No. 235.

In the meantime, the DPSC Defendants filed a motion with this Court for limited remand and to hold the appeal in abeyance. ECF No. 25. Specifically, the DPSC Defendants acknowledged the district court's admission that its oral ruling denying the summary judgment motions was "deficient" because it did not "convey[]" the "record evidence," including the parties' "statements of disputed and undisputed facts," that the district court "considered" in denying qualified immunity. ECF No. 25-1 at 4 (explaining the district court thought it "highly likely" that this Court, at a minimum, "will vacate [the district court's] denial of defendants' motion for summary judgment for failure to provide citations to record evidence."); ECF No. 25-2 (Transcript of Hearing). The DPSC Defendants asked this Court to (a) issue a limited remand, directing the district court to vacate the Summary Judgment Ruling and correct its "failure to provide citations to record evidence" by identifying any perceived genuine disputes of material facts concerning qualified immunity, and (b) hold this appeal in abeyance for 30 days, after which

the Court would assume jurisdiction. *Id.* at 9–10. This Court denied that motion. ECF No. 33-2.

## SUMMARY OF THE ARGUMENT

Plaintiffs claim the DPSC Defendants violated their Fourteenth and Eighth Amendment rights while they were pretrial detainees. None of these claims can survive summary judgment.

**I.** As a threshold matter, Plaintiffs face insurmountable jurisdictional defects. Plaintiffs do not have standing to bring any of their claims against the DPSC Defendants. That's because they cannot establish that their alleged injuries are "fairly traceable" to the DPSC Defendants' actions. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024).

Plaintiffs also face redressability and mootness issues. The Prison Litigation Reform Act (PLRA) bars district courts from ordering injunctive relief against alleged constitutional violations that are not "current and ongoing." *E.g.*, *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002). And their request for declaratory and injunctive relief is moot, as none of the Plaintiffs are still at MPCC. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

The claims against the DPSC Defendants in their official capacities are also plainly barred by sovereign immunity. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Nor can *Ex Parte Young* save those claims, as Plaintiffs do not "claim to be presently harmed by" the DPSC Defendants. *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 738–39 (5th Cir. 2020). That means their requested relief cannot act prospectively. *Calhoun v. Collier*, 78 F.4th 846, 851 (5th Cir. 2023); *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc). This Court also has not yet determined whether Plaintiffs *can* bring official capacity claims under Section 1983, or if such claims must instead be pursued solely through the equitable cause of action recognized in *Ex parte Young*. *See Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 948 n.4 (5th Cir. 2022). Regardless, the official capacity claims must be dismissed for lack of standing.

**II.** Merits-wise, the DPSC Defendants are entitled to qualified immunity. As a matter of law, the DPSC Defendants did not violate any of Plaintiffs' constitutional rights. The district court erred in holding otherwise.

18

**A.** To start, this Court can easily render summary judgment for the DPSC Defendants on all claims arising under the Eighth Amendment. Plaintiffs were all pretrial detainees at the time of the alleged incidents. ROA.1221, 1229–30. The Eighth Amendment is "limited in scope *to convicted prisoners* and *do[es] not apply to pretrial detainees* such as the plaintiffs." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (emphasis added). Plaintiffs cannot allege a violation of rights they do not have, so the Eighth Amendment claims fail at step one of overcoming the DPSC Defendants' qualified immunity. The district court erred in holding otherwise.

**B.** All that remains, then, are Plaintiffs' Fourteenth Amendment claims. Those are easily defeated, as the DPSC Defendants did not violate any of Plaintiffs' constitutional rights. Louisiana law is clear: The Parish Sheriff—not DPSC—is responsible for pretrial detainees in local parish jails. *See* La. R.S. §§ 15:704, 706. The district court's ruling essentially puts DPSC leadership on the hook for money damages for failing to make policies *where State law forbids*.

It would be inappropriate for a federal court to render Louisiana's duly enacted statutory scheme essentially null and void by judicially re-

writing the division of responsibilities governing pretrial detainees and convicted inmates. That would violate basic principles of federalism, which are particularly important in the context of prison administration. *See Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973). The district court's contrary holding, which relied entirely on the broad misapplication of circuit precedent, was erroneous. The DPSC Defendants are entitled to both qualified immunity and summary judgment as a matter of law.

**C.** Normally, this Court would also review the reasonableness of the DPSC Defendants' actions to determine whether they are entitled to qualified immunity. But the district court denied "the motion simply because 'fact issues' remain," so, at minimum, this Court should remand for clarification. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001).

In sum, the easiest resolution of this case is to dismiss for lack of subject matter jurisdiction. In all events, the official capacity claims are barred by sovereign immunity and should be dismissed. From there, the Court should reverse the district court's denial of the DPSC Defendants' qualified immunity and render judgment in their favor. At minimum, this Court should remand for clarification.

20

## STANDARD OF REVIEW

This Court examines jurisdictional issues, such as sovereign immunity, *de novo*. *City of Austin*, 943 F.3d at 997. Moreover, "a lack of subject matter jurisdiction may be raised at any time." *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002) (citation modified).

This Court also reviews the summary judgment denial of qualified immunity *de novo*. *Rucker v. Marshall*, 119 F.4th 395, 399 (5th Cir. 2024) (citation omitted). The review is limited "to the extent that [the denial] turns on an issue of law." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020). This Court can "consider only 'the scope of clearly established law and the objective reasonableness' of the defendant's acts (as determined by the district court)." *Jason v. Tanner*, 938 F.3d 191, 194 (5th Cir. 2019) ("We can review the *materiality* of any factual disputes, but not their *genuineness*. Materiality challenges contend that taking all the plaintiff's factual allegations as true no violation of a clearly established right was shown." (citation modified)).

A defendant's assertion of qualified immunity shifts the ordinary summary judgment burden to the plaintiff to rebut legal immunity. *King*

*v. Handorf*, 821 F.3d 650, 653–54 (5th Cir. 2016). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

### I. PLAINTIFFS FAILED TO ESTABLISH SUBJECT MATTER JURISDICTION.

Plaintiffs face two insurmountable jurisdictional problems with this case: (1) Plaintiffs lack standing to bring this suit, primarily because they do not allege an injury that is traceable to the DPSC Defendants, and (2) sovereign immunity bars their official capacity claims against the DPSC Defendants. As such, the Court should dismiss the Complaint in its entirety.

#### A. Plaintiffs Do Not Have Standing For Any Of Their Claims Against The DPSC Defendants.

Plaintiffs face a damning problem: They do not have standing to bring their claims against the DPSC Defendants. Plaintiffs "bear[] the burden of establishing standing as of the time [they] brought th[e] lawsuit and maintaining it thereafter." *Murthy*, 603 U.S. at 58 (third alteration in original) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)).

In fact, each plaintiff "must show that" he "has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id.* at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). And because "standing is not dispensed in gross," "'plaintiffs must demonstrate standing for *each* claim that they press' against *each* defendant, 'and for *each* form of relief that they seek.'" *Id.* at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphases added)). They fail to do so.

At root, Plaintiffs have a traceability problem. Traceability calls for, at minimum, causation in fact. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("The plaintiff must also establish that the plaintiff's injury likely was caused … by the defendant's conduct."); *TransUnion*, 594 U.S. at 423 ("[T]he injury was likely caused by the defendant."). Traceability is thus the standing requirement that ensures that "standing is not dispensed in gross." *TransUnion*, 594 U.S. at 431. "The causation requirement screens out plaintiffs who were not injured by the defendant's action." *All. for Hippocratic Med.*, 602 U.S. at 383.

23

Such is the case here. As explained more fully *infra* Section II, Plaintiffs allege that the DPSC Defendants violated their Eighth and Fourteenth Amendment rights and are thus liable under Section 1983. More specifically, they claim the DPSC Defendants are supervisory liable for unconstitutional conditions of confinement and episodic acts or omissions.

But the DPSC Defendants did not cause any of Plaintiffs' alleged injuries. In fact, the DPSC Defendants *could not* have violated Plaintiffs' constitutional rights, as DPSC has no legal responsibility for *any* pretrial detainee. Louisiana law expressly assigns that authority and responsibility to the parish sheriff as the "keeper of the jail." La. R.S. §§ 15:704, 706. Put simply, there was nothing the DPSC Defendants could have done to change the conditions of confinement for pretrial detainees.

Plaintiffs thus cannot trace their alleged injuries to the actions of the DPSC Defendants. Instead, their injuries are properly traceable to the actions of the Madison Parish Sheriff as "the keeper of the public jail"—who is statutorily charged with managing and maintaining all

24

pretrial detainees. La. R.S. §§ 15:704, 706. Plaintiffs properly sued the Madison Parish Sheriff, and the two parties settled.[6] ROA.2602–03.

But properly suing the Madison Parish Sheriff does not make this suit proper. Standing for claims against one defendant does not give a plaintiff carte blanche against all named defendants—and this appeal centers on what injuries *these Plaintiffs* have suffered, how *these* injuries are traceable to *these* DPSC Defendants, and how this Court can redress *these* injuries. *See Murthy*, 603 U.S. at 57; *TransUnion*, 594 U.S. at 423. Plaintiffs fail to make—and indeed cannot make—the necessary legal connection between their alleged injuries and the DPSC Defendants' actions, so they lack standing. *See Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.").

---

[6] Section 1983 served its purpose here: Plaintiffs recovered for a purported constitutional violation from the Madison Parish Sheriff—the jail's supervisor, and the only defendant arguably committing a constitutional violation. Their settlement ended this case under any flag—be it sovereign immunity, standing, or liability.

Plaintiffs also face a redressability problem for their desired prospective relief. That is unsurprising because "causation and redressability [] are often 'flip sides of the same coin.'" *All. for Hippocratic Med.*, 602 U.S. at 380 (citation omitted) ("If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury."). Their requested relief against the State Defendants would not redress their injuries.

Their requested relief also runs headlong into the PLRA, 18 U.S.C. §§ 3626, *et seq.*, which strictly limits federal court jurisdiction and remedial power over prison conditions claims, and bars district courts from ordering injunctive relief against alleged constitutional violations that are not "current and ongoing." *E.g.*, *Hallett*, 296 F.3d at 743; *see also Dockery v. Cain*, 7 F.4th 375, 380 n.4 (5th Cir. 2021) (noting that "[c]ourts are split" on this issue but declining to decide it). Indeed, the PLRA's plain text permits injunctive relief only to address "*the* violation of the Federal right"—*i.e.*, a then-existing violation. 18 U.S.C. § 3626(a)(1)(A) (emphasis added). "[I]f a violation no longer exists, the statute does not permit the court to order prospective relief." *Hallett*, 296 F.3d at 743. Prospective relief has a broad statutory definition; it encompasses "all

relief other than compensatory money damages." 18 U.S.C. § 3626(g)(7). Any prospective relief would thus run headlong into the PLRA's bar on prospective relief for non-existent violations.

Finally, Plaintiffs also face a mootness problem. As explained above, Plaintiffs are no longer pretrial detainees housed in a parish jail. In fact, two of the Plaintiffs—Latavius Paschal and Antone Henderson—are not incarcerated in Louisiana. *See supra* n.2, n.3. James Murray was convicted and is now incarcerated in a DPSC facility. *See supra* n.4. Release from custody and transfer to another institution mooted Plaintiffs' claims for declaratory and injunctive relief. *See Herman*, 238 F.3d at 665 (determining that an inmate's transfer to a different unit rendered claims for declaratory and injunctive relief relating to conditions at the original unit moot). The Plaintiffs are clearly no longer subject to the conditions of the MPCC or to the policies and procedures governing that parish jail. Their requests for declaratory and injunctive relief are moot.

## B. Sovereign Immunity Bars Plaintiffs' Official Capacity Claims.

The claims against the DPSC Defendants in their official capacities are plainly foreclosed by sovereign immunity.[7] That is because "Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin*, 943 F.3d at 997. That jurisdictional bar extends to "suits against state officials or agencies that are effectively suits against a state," including official capacity claims. *Id.*; *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) ("[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." (citation and quotation omitted)). Thus, "unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit." *City of Austin*, 943 F.3d at 997. "Louisiana has not waived its sovereign immunity," and Section 1983 does not "abrogate[] state sovereign immunity." *Price v. Shorty*, 632 F.

---

[7] In pleadings below, Plaintiffs admitted they cannot seek money damages for the official capacity claims. ROA.343–44; *see Will v. Mi. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding a state official is not a person for purposes of Section 1983).

App'x 211, 212 (5th Cir. 2016) (per curiam). Accordingly, Plaintiffs'
official capacity claims are barred.

Nor can the "very narrow" *Ex Parte Young* exception save the
official capacity claims. *Pennhurst*, 465 U.S. at 114 n.25. That exception
requires Plaintiffs to (1) allege an ongoing violation of federal law and
(2) seek relief properly characterized as prospective. *See Verizon Md., Inc.
v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Plaintiffs fail both
requirements—largely because they are no longer pretrial detainees at
MPCC.

There are some clear-cut parameters for the exception. For
example, Plaintiffs are prohibited from seeking a backward looking, past
tense declaration that the DPSC Defendants violated Plaintiffs'
constitutional rights. *Calhoun*, 78 F.4th at 851 (*Ex parte Young* "does not
permit judgments against state officers declaring that they violated
federal law in the past[.]" (quotation omitted)). Bare minimum, "a
complaint must allege that the defendant *is violating* federal law, not
simply that the defendant has done so." *NiGen Biotech, L.L.C. v. Paxton*,
804 F.3d 389, 394 (5th Cir. 2015). Prospective relief hinges on a present
harm. *Williams*, 954 F.3d at 738–39 ("Thus, because plaintiffs claim to

be presently harmed by these consequences, they may pursue prospective relief under *Ex parte Young*.").

Sure, not all *Ex Parte Young* determinations are that easy. "Often, the line between [] permissible and [] forbidden" relief is "fuzzy." *Green Valley*, 969 F.3d at 471 (citing *Edelman v. Jordan*, 415 U.S. 651, 667 (1974) ("[T]he difference between the type of relief barred by the Eleventh Amendment and that permitted under ... *Young* will not in many instances be that between day and night.")). That is partly because "sovereign immunity does not turn entirely on the relief sought." *Id.*; accord *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996) ("[T]he relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."). In fact, "[m]erely requesting injunctive or declaratory relief is not enough." *Green Valley*, 969 F.3d at 471.

Fortunately, this is an easy case. Plaintiffs fail at step one of *Ex Parte Young*. Their complaint does not even attempt to allege an *ongoing* violation of their constitutional rights.[8] *See NiGen Biotech*, 804 F.3d at

---

[8] For the official capacity claims, Plaintiffs allege violations of their Fourteenth and Eighth Amendment rights. But, as explained *infra* Section II.A, pretrial detainees do not even have Eighth Amendment

394 n.5 ("This requirement is similar but not identical to the Article III minimum for standing to request an injunction, which requires ongoing harm or a threat of imminent harm."). The problem is obvious: None of Plaintiffs are currently pretrial detainees in a local parish jail. That means their alleged harms are inherently limited to allegations of *past* violations of their constitutional rights.

Perhaps that's why Plaintiffs' requested relief contains no specificity. Instead, they seek "declaratory relief" and "injunctive relief" for all of their claims (as well as other relief prohibited for official capacity claims). ROA.1245. Two problems. First, any declaratory relief would be backward looking—a declaration that the DPSC Defendants previously violated their rights. That is impermissible. *See Calhoun*, 78 F.4th at 851. Second, any injunction would not redress an ongoing violation. That flouts *Young*'s requirement for prospective relief. *See Green Valley*, 969 F.3d at 473 (specific injunctive "relief, if awarded, would redress an ongoing violation of [Plaintiff's] rights"); *see also Papasan v. Allain*, 478 U.S. 265, 278 (1986) (*Young* focuses on cases "in which the relief against the state official directly ends the violation of federal law as opposed to

_____

rights. *See Morin*, 77 F.3d at 120.

31

cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("[C]ompensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."). Thus, *Ex Parte Young* cannot save the official capacity claims, so they must be dismissed for lack of jurisdiction.

Moreover, it is an open question within this Circuit as to whether *any* plaintiff can bring official capacity claims under Section 1983. *See Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 311–14 (5th Cir. 2021) (Oldham, J., granting Judge Mack's motion for stay pending appeal and discussing Section 1983 official capacity claims) (vacated); *Mack*, 49 F.4th at 948 n.4 (vacating that portion of the stay because it was unnecessary to resolve the case, but "leav[ing] that question open for later consideration"). As Judge Oldham theorized in *Mack*'s stay pending appeal, "the only way to bring an official capacity claim against an officer of the State is to do so under the equitable cause of action recognized in *Ex parte Young*." *Mack*, 4 F.4th at 311. A complaint alleging a Section 1983 official capacity claim, according to him, cannot seek "relief only under [Section 1983] and never once mention[] the equitable cause of

action recognized in *Ex Parte Young*." *Id.* at 312. That pleading burden lies with the plaintiff as "the master of his complaint." *Id.*

*Mack* may not have been the right vehicle to affirm Judge Oldham's position, but this case provides the Court an opportunity to answer the open question. Much like in *Mack*, Plaintiffs chose to "invoke only" Section 1983 and "never once mentioned the equitable cause of action recognized in *Ex Parte Young*." *Id.*

In all events, even if Plaintiffs' Section 1983 claims against the DPSC Defendants in their official capacities were cognizable (they are not), the claims fail for all the same reasons the individual-capacity claims fail. *Infra* Section II.

\* \* \*

Plaintiffs' suit is riddled with fundamental jurisdictional defects that require dismissal of their claims against the DPSC Defendants.

## II. THE DPSC DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

The DPSC Defendants are entitled to qualified immunity (and thus summary judgment) as a matter of law. To deny qualified immunity, a district court must find "that the alleged conduct amounts to a constitutional violation" and that "the right was clearly established at

the time of the conduct." *Buehler v. Dear*, 27 F.4th 969, 980 n.13 (5th Cir. 2022) (quoting *Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009)); *Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022). "Both steps—the constitutional merits and the 'clearly established law' inquiry—are questions of law." *Joseph*, 981 F.3d at 331. If a plaintiff cannot satisfy either of these requirements, then the defendant is entitled to qualified immunity as a matter of law. *See Cleveland v. Bell*, 938 F.3d 672, 675–76 (5th Cir. 2019); *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) ("We can decide one question or both."); *see also* Fed. R. Civ. P. 56(a) (summary judgment is appropriate when "there is no genuine dispute as to any material fact" and when the moving party "is entitled to a judgment as a matter of law").

Plaintiffs and the district court erred on both prongs. First, pretrial detainees *do not have* Eighth Amendment rights—that Amendment only applies post-conviction. Those claims automatically fail both prongs.

Second, the DPSC Defendants did not violate Plaintiffs' Fourteenth Amendment rights, as they have no responsibility or authority over pretrial detainees in local parish jails. Louisiana law unambiguously vests that responsibility and authority in the Parish Sheriff. The district

court's vague assertions to the contrary were thus not only erroneous (and based on an overly broad reading of inapplicable Circuit precedent) but also threaten to nullify the State's duly enacted statutory scheme. Federalism cautions against such an approach. Those claims must fail, too.

## A. The DPSC Defendants Are Entitled To Qualified Immunity On The Eighth Amendment Claims.

Overcoming qualified immunity and proving up claims under Section 1983 both require a plaintiff to establish a violation of a federal right. Plaintiffs cannot meet this requirement for any of their Eighth Amendment claims, ROA.1238–41 (Counts II and III), as the alleged constitutional violations occurred while they were pretrial detainees. ROA.1221 (Murray was pretrial detainee); ROA.1229 (Henderson was pretrial detainee); ROA.1230 (Paschal was pretrial detainee); *see* ROA.1233 (admitting Murray *later* "became a sentenced DPSC prisoner").

As Judge Wisdom succinctly explained: "The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope *to convicted prisoners* and *do not apply to pretrial detainees* such as the plaintiffs." *Morin*, 77 F.3d at 120 (emphasis added); *City of Revere*

*v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("Eighth Amendment scrutiny is appropriate only after the State has … secured a formal adjudication of guilt[.]" (internal quotation and citation omitted)); *Diaz ex rel. Diaz v. Mayor of Corpus Christi*, 121 F. App'x 36, 39 (5th Cir. 2005) (per curiam) ("[T]he Cruel and Unusual Punishment Clause protects only convicted prisoners."). That's because the "constitutional rights of a pretrial detainee … flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Plaintiffs thus fail to make any cognizable claims under the Eighth Amendment. *See Carlton v. Fearneyhough*, No. 07-10676, 2008 WL 686595, at *2 (5th Cir. Mar. 12, 2008) (unpublished) (per curiam) ("Because he was in pretrial custody, [Plaintiff] simply fails to make any cognizable claim under the Eighth Amendment."). Without a constitutional violation or a clearly established right, the Eighth Amendment claims cannot survive summary judgment or overcome the DPSC Defendants' qualified immunity as a matter of law. *See Celotex*

*Corp.*, 477 U.S. at 322; *Salazar*, 37 F.4th at 281. The district court erred in holding otherwise.

### B. The DPSC Defendants Are Entitled To Qualified Immunity On The Fourteenth Amendment Claims.

Plaintiffs' Fourteenth Amendment claims fare no better, as they once again failed to establish that *the DPSC Defendants* violated their rights. Plaintiffs bring conditions-of-confinement and episodic-acts-or-omissions claims against the DPSC Defendants. But they run into the same problem twice over: Both their claims and liability under Section 1983 require a direct connection between the alleged constitutional violations and the DPSC Defendants' actions—one they simply cannot make. Plaintiffs have thus failed at prong one of the qualified immunity analysis—establishing the DPSC Defendants violated their constitutional rights. *Buehler*, 27 F.4th at 980 n.13. As a matter of law, the DPSC Defendants are entitled to qualified immunity, and the district court was incorrect in holding otherwise.

Beyond simply being incorrect, Plaintiffs' theory of constitutional liability invites this Court to sidestep Louisiana's carefully drawn lines of responsibility and impose constitutional duties on State officials who neither control nor oversee the custody of pretrial detainees. Accepting

Plaintiffs' legal theory would improperly override Louisiana law and raise serious federalism concerns.

### 1. Plaintiffs' Fourteenth Amendment Claims All Require A Connection To The DPSC Defendants.

Plaintiffs' claims against the DPSC Defendants are brought under a theory of supervisory liability. "When a plaintiff alleges liability on the part of supervisory officials, he must adequately plead facts showing that (1) the official 'participated in acts that caused constitutional deprivation' or (2) 'implemented unconstitutional policies causally related to his injuries.'" *Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025) (per curiam) (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017)). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alteration in original) (internal quotation and citation omitted).

Conditions-of-confinement claims attack the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at

643. To prevail on their conditions-of-confinement claims, Plaintiffs must prove the DPSC Defendants' actions (or inactions) resulted in "(1) a rule or restriction, an intended condition or practice, or a *de facto* policy as evidenced by sufficiently extended or pervasive acts [], (2) not reasonably related to a legitimate governmental objective, and (3) that violated [their] constitutional rights." *Edler v. Hockley Cnty. Comrs Court*, 589 F. App'x 664, 668 (5th Cir. 2014) (per curiam) (citing *Hare*, 74 F.3d at 645); *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452, 454–55 (5th Cir. 2009) (explaining intent of the individual actor can be inferred).

Episodic-act-or-omission claims occur when "the complained-of harm is a particular act or omission of one or more officials." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (quotation omitted). To prevail, Plaintiffs must prove that the DPSC Defendants acted or failed to act with deliberate indifference to their constitutional rights. *Hare*, 74 F.3d at 636; *Duvall v. Dallas Cnty.*, 631 F.3d 203, 210 (5th Cir. 2011) (per curiam) ("To show a violation under the episodic-acts line of cases, the plaintiff must show *subjective* deliberate indifference on the part of the [defendant] who committed the acts or omissions."); *see Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752,

756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet.").

The point? Plaintiffs' Fourteenth Amendment claims all hinge on the *DPSC Defendants' actions* and their supposed authority over MPCC. *See Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.").

### 2. The Parish Sheriff Bears Legal Responsibility For The Pretrial Detainees, Not DPSC.

Louisiana law sets up a system where the entity that bears legal responsibility for a detainee hinges on conviction.

*Responsibilities of the Parish Sheriff.* In Louisiana, "[e]ach sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders." La. R.S. § 15:704. This statute means exactly what it says—"the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed." *Amiss v. Dumas*, 411 So. 2d 1137, 1141 (La. Ct. App. 1982), *writ denied*, 415 So.

2d 940 (La. 1982). And, as the focus is on the jail and its peace, it applies indiscriminately to pretrial detainees and convicted inmates alike.

Time and again, courts have agreed. *See, e.g.*, *Aucoin v. Larpenter*, 2021-0064 (La. App. 1st Cir. 9/20/21), 329 So. 3d 363, 369, *writ denied*, 2021-01505 (La. 12/7/21), 328 So. 3d 420 ("A sheriff is charged with the safekeeping of prisoners in his jail, including those who are transferred there.... Our law provides that prison authorities owe a duty to exercise reasonable care to protect inmates from harm." (citing La. R.S. §§ 15:704, 706(C)); *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) ("The Sheriff's office also controls the inmates of the jail, the employees of the jail, and the daily operation of the jail."); *Quatroy v. Jefferson Par. Sheriff's Off.*, CIV.A. 04-1425, 2009 WL 1380196, at *5 (E.D. La. May 14, 2009) (collecting state court, district court, and Fifth Circuit cases).

Even this Court has agreed. *See Quinn v. Manuel*, 773 F.2d 605, 609 (5th Cir. 1985) ("The administration of the jails is the province of the sheriff[,]" meaning the parish sheriff "'has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed.'" (quoting *Amiss*, 411 So. 2d at 1141)); *Thompkins v. Belt*, 828

41

F.2d 298, 304 n.8 (5th Cir. 1987); *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008) (per curiam) ("We have examined Louisiana [law], and we agree that day-to-day operation of the parish prison is the responsibility of the local sheriff[.]").

And that is why courts continue to hold that the parish sheriff is a proper defendant for violations of pretrial detainees' constitutional rights—especially for conditions-of-confinement claims. *See, e.g.*, *Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2d Cir. 1991) (explaining that the sheriff is the proper defendant in an official capacity suit challenging the conditions at a parish prison); *Marshall v. Webre*, CV 23-1319, 2023 WL 5952645, at *4 (E.D. La. Sept. 13, 2023) ("Plaintiff has alleged sufficient facts to state a claim against Sheriff Webre in his official capacity as a policymaker for LPDC for the purposes of § 1983 liability."); *Gough v. McCain*, 1:19-CV-01183, 2022 WL 669866, at *22 (W.D. La. Feb. 3, 2022), *report and recommendation adopted*, 19-CV-1183, 2022 WL 669411 (W.D. La. Mar. 4, 2022) ("When a sheriff oversees a parish jail, he is responsible for such matters as the training of personnel and the safety and medical care of inmates.").

That responsibility does not change when an inmate is transferred from one local parish facility to another. In that instance, the "sheriff of the parish to which the prisoner is conveyed shall keep the prisoner safe and secure, and subject to all orders or decrees issuing from the parish from which the prisoner was transferred." La. R.S. § 15:706(C); *see Aucoin*, 329 So. 3d at 369 ("A sheriff is charged with the safekeeping of prisoners in his jail, including those who are transferred there."). That is because the sheriff's statutory responsibility is pegged to his jail, not individual inmates.

*DPSC's Responsibility*. The same cannot be said for DPSC. Under Louisiana law, DPSC's responsibility kicks in as soon as an individual is convicted. In fact, "only individuals actually sentenced to death or confinement at hard labor shall be committed to [DPSC]." La. R.S. § 15:824(C)(1). DPSC's obligation to the convicted inmate does not change based on his or her custodial location. La. R.S. § 15:824(A) ("[A]ny individual subject to confinement in a state adult penal or correctional institution shall be committed to [DPSC] and not to any particular institution within the jurisdiction of the department."). DPSC "may transfer an inmate from one such facility to another, insofar as the

transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." *Id.*

Under certain circumstances, the transfer of a convicted inmate can even be to a local parish jail. La. R.S. § 15:824(D). In that instance—and in that instance only—the Basic Jail Guidelines come into play. That makes sense, as the convicted-inmate-transfer provision *mandates* that both the transfer and detainment be "in accordance with treatment, training, and security needs established by the department." La. R.S. § 15:824(A). Put differently, DPSC's statutory burden and responsibility follows the convicted inmate—regardless of where he is transferred. Hence, the guidelines, which reflect the "agreement between the Louisiana Sheriffs' Association and the DPSC for basic guidelines for housing DPSC inmates in parish jails." *Wells v. La. Dep't. of Pub. Safety & Corr.*, No. 46,428 (La. App. 2d Cir. 8/24/11), 72 So. 3d 910, 925, *writ denied*, 11–2637 (La. 2/10/12), 80 So. 3d 474.

*The overarching statutory scheme.* Louisiana's statutory framework operates as a coherent whole. A parish sheriff is statutorily responsible for all detainees in his parish jail. La. R.S. §§ 15:704, 706. But the nature

of that responsibility depends on whether the individual is a pretrial

detainee or a convicted inmate. When it comes to pretrial detainees, the

sheriff holds them on his own behalf. That makes the sheriff the sole

entity legally responsible for the pretrial detainees' custody and care.

By contrast, when a sheriff holds a convicted inmate, he does so on

*behalf of DPSC*. Because DPSC's statutory obligation attaches to the

inmate himself—regardless of where he is housed—both DPSC *and* the

sheriff share responsibility for the convicted inmate. La. R.S. §§ 15:704,

824. The guidelines embody that dual responsibility, ensuring that DPSC

fulfills its constitutional obligations to inmates housed in local facilities.

*See* ROA.1210 (the guidelines were created to ensure "the fundamental

rights of *DPSC prisoners* housed in secure non-DPSC facilities are not

jeopardized by this arrangement" (emphasis added)). In short, DPSC's

duty flows through the sheriff to the convicted inmate—but it stops there.

That duty does not extend to pretrial detainees merely because they

share a facility with DPSC's convicted inmates.

This division of responsibility is not incidental; it reflects deliberate

choices by the Louisiana Legislature about how correctional authority

should be allocated between state and local actors. Yet Plaintiffs' theory

45

of constitutional liability would require this Court to judicially disregard that structure and assign liability to officials who, by operation of state law, had no authority over the alleged misconduct. Basic principles of federalism caution against that approach. *See Preiser*, 411 U.S. at 491–92 ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."); *Valentine v. Collier*, 993 F.3d 270, 294 (5th Cir. 2021) (Oldham, J., concurring) ("federalism concerns are particularly acute in the context of prison management").[9]

---

[9] Justice Thomas hit the nail on the head of the federalism problem: The "federal judiciary is ill equipped to make these types of judgments," and, more importantly, the "Framers never imagined that federal judges would displace state executive officials and *state legislatures in charting state policy*." *Lewis v. Casey*, 518 U.S. 343, 386 (1996) (Thomas, J., concurring) (emphasis added). Yet Plaintiffs' theory of constitutional liability invites this Court to do exactly that: Displace the Louisiana Legislature's duly enacted state policy. Doing so would "demonstrate little respect for the principles of federalism, separation of powers, and judicial restraint that have traditionally governed federal judicial power in this area." *Id.* at 388.

This Court should decline that invitation when a narrower, well-supported path is available: honor Louisiana law, respect federalism, and reject Plaintiffs' claims against the DPSC Defendants.

This Court's reasoning in *Crittindon* is consistent with this statutory structure. There, *convicted inmates* housed in local parish jails filed Section 1983 suits against DPSC officials, alleging that the officials failed to adopt policies ensuring their timely release and directly participated in conduct that caused their overdetention. *Crittindon*, 37 F.4th at 181. Judge Higginbotham, writing for the panel majority, determined that "[t]hrough the promulgation of the Basic Jail Guidelines and DPSC's audits of local parish jails, there [was] ample evidence that [the] DPSC officials had power to control the facilities in which *DPSC housed its prisoners*." *Id.* at 191 (emphasis added).

*Crittindon* concerned convicted inmates—the province of DPSC. This case concerns pretrial detainees—the province of the sheriff. The *Crittindon* panel did not grapple with the state-law framework governing the custody of pretrial detainees. In fact, the panel opinion does not even mention Revised Statutes Sections 704 or 706—the provisions that unambiguously assign exclusive custody of pretrial detainees to parish sheriffs.[10] *Crittindon*'s determination of State control for convicted

---

[10] Perhaps that's why the panel opinion ignored the Louisiana Supreme Court's decades-old interpretation of its own state laws. *Harper v. State, Dep't of Pub. Safety & Corr.*, 679 So. 2d 1321, 1323 (La. 1996)

inmates simply does not apply to pretrial detainees. DPSC has no legal duty, operational role, or factual involvement in their detention.

*This case.* So how does this statutory structure apply here? The answer is straightforward. Plaintiffs were pretrial detainees at the time of the alleged incidents. As a matter of law, only the Madison Parish Sheriff—not DPSC—was responsible for safeguarding their constitutional rights.

---

("We disagree with the holding that the DPSC had a duty in this case. By statute, the sheriff is charged with the safekeeping of prisoners in his jail, including those who are transferred to his jail. [La. R.S. §§ 15:704, 706(c)].... We have been given no citation to any statute or regulation which would give any arm of the DPSC the power to control what a sheriff does with prisoners in his custody.... 'the sheriff has absolute authority over the inmate without any control whatsoever exercised by the DPSC.'" (quoting *Cooley v. State*, 533 So. 2d 124, 126 (La. App. 4th Cir. 1988)); *see Crittindon*, 37 F.4th at 200 (Oldham, J., dissenting) (describing these laws as "undisputedly clear"). Appellants, of course, agree with the Louisiana Supreme Court's correct interpretation of Louisiana law, but accept *Crittindon* as precedent for this appeal.

### 3. The DPSC Defendants Did Not Violate Plaintiffs' Constitutional Rights, So They Are Entitled To Qualified Immunity.

The legal line between pretrial detainee and convicted inmate is not just formal; it is dispositive of this case. Under Louisiana's statutory scheme, DPSC and its officials have no authority to create policy, implement training, or exercise control with respect to pretrial detainees. Accordingly, the DPSC Defendants cannot be held liable for Plaintiffs' conditions-of-confinement or episodic-act-or-omission claims, as they had no legal responsibility for Plaintiffs' custody or care. That responsibility rested solely with the Madison Parish Sheriff.

Because the DPSC Defendants had no authority over Plaintiffs' confinement, their conduct cannot amount to a constitutional violation. The district court, therefore, could not determine that "that the alleged conduct amount[ed] to a constitutional violation"—let alone a violation of a right that "was clearly established at the time of the conduct." *Buehler*, 27 F.4th at 980 n.13. The district court erred in denying the DPSC Defendants qualified immunity and summary judgment. *See Celotex Corp.*, 477 U.S. at 322; *Salazar*, 37 F.4th at 281.

\*   \*   \*

49

Normally, this Court reviews the denial of qualified immunity by assessing (1) whether the plaintiff has alleged the violation of a clearly established constitutional right and (2) the reasonableness of the officer's conduct. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). This brief focuses on the first prong. As explained, the DPSC Defendants did not—and indeed could not—violate Plaintiffs' constitutional rights. *See supra* Section II. That's because Plaintiffs do not have Eighth Amendment rights and the DPSC Defendants did not violate their Fourteenth Amendment rights. Those legal conclusions alone are enough to entitle the DPSC Defendants to qualified immunity and for this Court to render judgment.

Beyond those dispositive conclusions, it is difficult to engage in a meaningful discussing of either of the qualified immunity questions in light of the district court's sparse analysis. The second prong, in particular, requires an analysis of "the objective reasonableness of the defendant's acts (*as determined by the district court*)." *Jason*, 938 F.3d at 194 (emphasis added) (quotation omitted). "Ideally, the district court's order denying summary judgment based on qualified immunity explains what facts the plaintiff may be able to prove at trial, i.e. what particular

facts the court assumed in denying summary judgment urged on the basis of qualified immunity." *Thompson*, 245 F.3d at 456. When "the court below fails to do this and, instead, denies the motion simply because 'fact issues' remain," this Court can "either scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order." *Id.*

The district court's order denied both parties' motions for summary judgment simply because "fact issues remain." *See* ROA.14944 ("[T]here are numerous questions of fact on all of the above issues … precluding … summary judgment."); ECF No. 25-1 at 4 (district court thought it "highly likely" that this Court "will vacate [its] denial of defendants' motion for summary judgment for failure to provide citations to record evidence."). Therefore, at minimum, this Court should remand "so that the trial court can clarify the order." *See Thompson*, 245 F.3d at 456.

## CONCLUSION

The district court erred in denying the Defendants' motion for summary judgment. The easiest resolution is to dismiss this case for lack of subject matter jurisdiction. Alternatively, this Court should reverse

and render judgment. Specifically, this Court should (1) dismiss the official capacity claims on sovereign immunity grounds, and (2) grant the DPSC Defendants summary judgment on the remaining claims because they are entitled to qualified immunity.

Respectfully submitted,

Dated:    June 30, 2025

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Kelsey L. Smith*
J. BENJAMIN AGUIÑAGA
Solicitor General
KELSEY L. SMITH
Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 428-7432
SmithKel@ag.louisiana.gov

*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

/s/ *Kelsey L. Smith*
KELSEY L. SMITH

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a) because it contains 9,581 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

Dated:    June 30, 2025